## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| REBECCA KAIN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>         v.<br><br>THE ECONOMIST NEWSPAPER NA, INC.,<br><br>                    Defendant. | Case No. 4:21-cv-11807-MFL-CI<br><br>Hon. Matthew F. Leitman<br><br>Mag. Judge Curtis Ivy, Jr. |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## <u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

The undersigned counsel certifies that Class Counsel communicated with Defendant's counsel, via email on March 1, 2023, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; Defendant's counsel does not oppose this motion, or the relief requested herein.

For the reasons set forth in Plaintiff's Brief in Support of her Unopposed Motion for Final Approval of Class Action Settlement, Plaintiff respectfully requests that the Court grant final approval to the Class Action Settlement and enter final judgment.[1]

---

[1] The Settlement Agreement and its exhibits are included with the accompanying Declaration of Philip L. Fraietta in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement.

Dated: March 1, 2023

Respectfully submitted,

By: */s/ E. Powell Miller*
One of Plaintiff's Attorneys

E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200
epm@millerlawpc.com

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107

*Class Counsel*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| REBECCA KAIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE ECONOMIST NEWSPAPER NA, INC.,<br><br>Defendant. | Case No. 4:21-cv-11807-MFL-CI<br><br>Hon. Matthew F. Leitman<br><br>Mag. Judge Curtis Ivy, Jr. |

## BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## STATEMENT OF ISSUES PRESENTED

1.  Whether this Court should find that notice to the Settlement Class satisfies the requirements of Due Process and Federal Rule of Civil Procedure 23, when direct notice – detailing the terms of the Settlement Agreement and individual options for objecting, opting-out, or automatically receiving payment – was transmitted via postcard notice or e-mail and reached 95.9% of the Settlement Class Members?

    **Plaintiff's Answer: Yes.**

2.  Whether this Court should grant final approval to the Settlement Agreement under Michigan's Preservation of Personal Privacy Act, M.C.L. §§ 445.1711-1715 ("PPPA"), finding it fair, reasonable, and adequate, when it delivers meaningful monetary relief to the Settlement Class?

    **Plaintiff's Answer: Yes.**

3.  Whether the Settlement Class should be finally certified under Federal Rule of Civil Procedure 23(a) and 23(b)(3) where this Court has conditionally certified the Class for settlement purposes and nothing has changed to alter the propriety of this Court's certification?

    **Plaintiff's Answer: Yes.**

## CONTROLLING AND MOST IMPORTANT AUTHORITY

Fed. R. Civ. P. 23

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003)

*Leonhardt v. ArvinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008)

*UAW v. Gen. Motors Corp.*,
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006)

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007)

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983)

*Fidel v. Farley*,
    534 F.3d 508 (6th Cir. 2008)

*Gascho v. Glob. Fitness Holdings, LLC*,
    822 F.3d 269 (6th Cir. 2016)

Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process
    Checklist and Plain Language Guide (2010)

# TABLE OF CONTENTS

Statement of Issues Presented ..................................................................... i

Controlling and Most Important Authorities ............................................. ii

Table of Authorities ................................................................................... v

I.      Introduction ..................................................................................... 1

II.     Summary of the Litigation ............................................................... 3

        A.      Michigan's Preservation of Personal Privacy Act ................ 3
        B.      Plaintiff's Allegations ........................................................ 4
        C.      The Litigation History and Settlement Discussions .............. 5

III.    Terms of the Settlement Agreement .................................................. 6

        A.      Class Definition ................................................................. 6
        B.      Monetary Relief ................................................................. 7
        C.      Release ............................................................................... 7
        D.      Notice and Administration Expenses ................................... 8
        E.      Service Award and Attorneys' Fees and Expenses ............... 8

IV.     The Notice Plan Comports with Due Process ................................... 9

V.      The Settlement Warrants Final Approval ........................................ 11

        A.      The Rule 23(e)92) Factors Weigh in Favor of Final Approval .......... 13
        B.      The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval 14

                1.      There is no Risk of Fraud or Collusion (*UAW* Factor 1) .......... 14
                2.      Litigation Through Trial Would Be Complex, Costly, and Long
                        (*UAW* Factor 2) ....................................................... 15
                3.      Discovery has Advanced far Enough to Allow the Parties to
                        Resolve the Case Responsibly (*UAW* Factor 3) ...................... 16
                4.      Plaintiff Would Face Real Risks if the Case Proceeded (*UAW*
                        Factor 4) ................................................................... 17
                5.      Class Counsel and the Class Representative Support the
                        Settlement (*UAW* Factor 5) ........................................... 18

6.    The Reaction of Absent Class members is Uniformly Positive (*UAW* Factor 6) .................................................................18

7.    The Settlement Serves the Public Interest (*UAW* Factor 7)......19

VI.    The Settlement Class Should be Finally Certified ........................................20

VII.    Conclusion ...............................................................................21

# TABLE OF AUTHORITIES

## Cases

*Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016) ..............3

*Coulter-Owens v. Rodale, Inc.*, Case No. 2:14-cv-12688 (E.D. Mich.)...................2

*Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283 (W.D. Ky. 2014).....................9

*Edwards v. Hearst Communications, Inc.*, Case No. 1:15-cv-09279 (S.D.N.Y. Apr. 24, 2019).......................................................................................................................2

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..........................................9, 19

*Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) ........................................................10

*Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016).................10

*Halaburda v. Bauer Publishing Co, LP*, Case No. 2:12-cv-12831 (E.D. Mich.)......2

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856 (E.D. Mich. Feb. 26, 2013) .........................................................................................................11

*Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679 (W.D. Mich. 2018)...................4

*In re Cardizem*, 218 F.R.D. 508 (E.D. Mich. 2003).........................................18, 19

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009)......................................................................10

*Kinder v. Meredith Corporation*, Case No. 1:14-cv-11284 (E.D. Mich.).... 2, 13, 14

*Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008) ...... 12, 14

*Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012)........................................................................................................................19

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 1:15-cv-05671 (S.D.N.Y. Mar. 6, 2019) ........................................................................2

*Moeller v. American Media, Inc.*, Case No. 2:16-cv-11367 (E.D. Mich.) ..........2, 14

*Olden v. Gardner*, 294 F. App'x 210 (6th Cir. 2008)...........................................18

*Perlin v. Time, Inc.* (No. 2:16-cv-10635) (E.D. Mich.)......................................2, 13

*Ruppel v. Consumers Union of United States, Inc.*, Case No. 7:16-cv-02444 (S.D.N.Y. Dec. 4, 2018)..........................................................................................2

*Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010)........................................................................................................................14

*Taylor v. Trusted Media Brands, Inc.*, Case No. 7:16-cv-01812 (S.D.N.Y. Feb. 1, 2018)..........................................................................................................................2

*UAW v. Gen. Motors Corp.*, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006)......9, 15

*UAW v. Gen. Motors Corp.*, 2008 WL 4104329 (E.D. Mich. Aug. 29, 2008)........18

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ............................. passim

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) ..............................................11

**Statutes**

M.C.L. § 445.1711 ...............................................................................3
M.C.L. § 445.1715 ...............................................................................3
M.C.L. § 600.5805(2) ..........................................................................5
M.C.L. § 600.5813 ...............................................................................5

**Other Authorities**

Fed. R. Civ. P. 12(b)(1).......................................................................5
Fed. R. Civ. P. 23(c)(2)(B) ..................................................................9
Fed. R. Civ. P. 23(e)...........................................................................11
Fed. R. Civ. P. 23(e)(2).................................................................. 11, 12
Fed. R. Civ. P. 26 .................................................................................5

**Rules**

Michigan's Preservation of Personal Privacy Act ...................................... 2, 3, 4, 15

## I.    INTRODUCTION[1]

On December 15, 2022, this Court preliminarily approved the class action settlement between Plaintiff Rebecca Kain ("Plaintiff") and Defendant The Economist Newspaper NA, Inc. ("The Economist" or "Defendant") and directed that notice be sent to the Settlement Class. *See* Order Granting Preliminary Approval, ECF No. 28. The settlement administrator has implemented the Court-approved notice plan and direct notice has reached 95.9% of the certified Settlement Class. The reaction from the class has been overwhelmingly positive, which is not surprising given the strength of the Settlement. Specifically, of the 22,987 Settlement Class Members, zero have objected, and only two requested to be excluded.[2] The Settlement represents the best ever per-class member recovery in a PPPA settlement and is an excellent result for the Class and the Court should grant final approval.

The Settlement's strength speaks for itself: it creates a $9,500,000 non-reversionary common fund which equates to a per-Class Member aggregate recovery of approximately $412, from which every Settlement Class Member (except for

---

[1]     Unless otherwise indicated, all capitalized terms herein have the same meaning as ascribed to them in the "Definitions" section of the Settlement Agreement (The "Agreement," the "Settlement," or the "Settlement Agreement").

[2]     The Settlement Administrator received a total of four requests for exclusion, but only two were from actual Settlement Class Members. *See* **Exhibit A**, Declaration of Ryan Bahry Regarding Settlement Administration ("Bahry Decl.") ¶ 19.

those who submit requests for exclusion from the Settlement) will automatically receive (*i.e.*, without having to file a claim form) a *pro rata* cash payment of approximately $261. The Settlement recovers more money per class member than any prior PPPA settlement—by a wide margin.[3] Unlike in other PPPA settlements where 80%-90% of the class did not receive payment, here every class member will receive payment.

For these reasons, and as explained further below, the Settlement is fair, reasonable, and adequate, warranting this Court's final approval.

---

[3]    *See Perlin v. Time, Inc.*, No. 2:16-cv-10635 ECF No. 51, PageID.778-789 (E.D. Mich.) (approving class action settlement that was expected to pay between $25 to $50 per claimant); *Taylor v. Trusted Media Brands, Inc.*, No. 7:16-cv-01812 ECF No. 87 (S.D.N.Y. Feb. 1, 2018) (approving class action settlement that paid approximately $41 per claimant); *Coulter-Owens v. Rodale, Inc.*, No. 2:14-cv-12688 ECF No. 54, PageID.852-866 (E.D. Mich.) (approving class action settlement that paid approximately $42 per claimant); *Kinder v. Meredith Corporation*, No. 1:14-cv-11284 ECF No. 72, PageID.2396-2436 (E.D. Mich.) (approving class action settlement that paid approximately $50 per claimant); *Edwards v. Hearst Communications, Inc.*, No. 1:15-cv-09279 ECF No. 314 (S.D.N.Y. Apr. 24, 2019) (approving class action settlement that paid approximately $98 per claimant); *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, No. 1:15-cv-05671 ECF No. 143 (S.D.N.Y. Mar. 6, 2019) (approving class action settlement that paid approximately $82 per claimant); *Ruppel v. Consumers Union of United States, Inc.*, No. 7:16-cv-02444 ECF No. 111 (S.D.N.Y. Dec. 4, 2018) (approving class action settlement that paid approximately $109 per claimant); *Moeller v. American Media, Inc.*, No. 2:16-cv-11367 ECF No. 42, PageID.891-899) (E.D. Mich.) (approving class action settlement that paid approximately $100 per claimant); *Halaburda v. Bauer Publishing Co, LP*, No. 2:12-cv-12831 ECF No. 68, PageID.1374-1383 (E.D. Mich.) (approving class action settlement that paid approximately $74 per claimant).

## II.    SUMMARY OF THE LITIGATION

### A. Michigan's Preservation of Personal Privacy Act

The Michigan legislature passed the PPPA to protect personal "privacy with respect to the purchase, rental, or borrowing of certain materials," including written materials, sound recordings, and video recordings. *See* Class Action Complaint, ECF No. 1, PageID.7-8 ("Compl."), ¶ 15. As such, the PPPA provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712.

To enforce the statute, the PPPA authorizes civil actions and provides for the recovery of statutory damages in the amount of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

In May 2016, the Michigan legislature amended the PPPA. *See* S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (Mich. 2016) (codified at M.C.L. § 445.1711, *et seq.*). The May 2016 amendment to the PPPA, which became effective on July 31, 2016, does not apply retroactively to claims that accrued prior to its July 31, 2016 effective date. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 439–41 (S.D.N.Y. 2016) ("[T]he amendment to the [PPPA] does not apply to Plaintiffs' claims, and the Court will assess the sufficiency of those claims under the law as it was when

3

Plaintiffs' claims accrued.") (Internal citations omitted).

Because the claims alleged herein accrued, and thus vested, prior to the July 31, 2016 effective date of the amended version of the PPPA, the pre-amendment version of the PPPA applies in this case. *See Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018).

### B. Plaintiff's Allegations

Defendant is a media company that publishes *The Economist* newspaper. *See* Compl., ¶ 10, PageID.6. Plaintiff alleges that before July 30, 2016, Defendant disclosed information related to its customers' magazine subscription histories and personal reading habits. *Id.* at ¶¶ 1-2, 5-8, 41-48, PageID.1-3, 4-5, 16-18. Plaintiff alleges that Defendant traded its customers' protected reading information with certain third parties – including data mining companies – in exchange for other demographic and lifestyle data that such companies have already gathered (or "mined") on each subscriber. *Id.* at ¶¶ 5, 41-43, PageID.4, 16-17. Plaintiff further alleges that Defendant thereafter "enhanced" its own customer profiles with this additional data, and then allegedly disclosed the enhanced information to other unrelated third parties for a profit. *Id.* at ¶ 63, PageID.21.

Plaintiff further alleges that no matter how consumers subscribed (*i.e.*, via postcard, over the phone, or on Defendant's website), Defendant's customers never provided consent to disclose information related to their magazine subscriptions to

third parties. *Id.* at ¶¶ 5, 8, 45-46, PageID.4, 5, 17. Plaintiff claims that this is because – during the subscription process – customers are not required to consent to any terms or policies informing them of Defendant's alleged disclosure practices. *Id.* at ¶ 45, PageID.17.

### C. The Litigation History and Settlement Discussions

On August 5, 2021, Plaintiff initiated this action with the Class Action Complaint (ECF No. 1). On December 20, 2021, Defendant responded to the Complaint by filing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) arguing, *inter alia*, that Plaintiff's claim is time barred under the applicable statute of limitations, and that Plaintiff lacks Article III standing (ECF No. 12). On January 10, 2022, Plaintiff filed an opposition (ECF No. 15), and on January 24, 2022, Defendant filed its reply (ECF No. 17). Plaintiff argued that the six-year statutory period found in M.C.L. § 600.5813 applies to this action. Defendant argued that the three-year statutory period found in M.C.L. § 600.5805(2) applies.

From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution. *See* **Exhibit B**, Declaration of Philip L. Fraietta in Support of Plaintiff's Unopposed Motion For Final Approval of Class Action Settlement ("Fraietta Decl."), at ¶ 8. Those discussions led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before The Honorable James

F. Holderman (Ret.)—formerly a judge in the Northern District of Illinois and now a mediator at JAMS (Chicago). *Id.* ¶ 9. As part of the mediation, the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class. *Id.* ¶ 10. Given that the information exchanged would contain the same information produced in formal discovery related to issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses. *Id.* ¶ 11.

The mediation took place on May 19, 2022 and lasted the entire day. *Id.* ¶ 12. At the conclusion of the mediation, the Parties reached agreement on all material terms of a class action settlement and executed a term sheet. *Id*. In the weeks following, Plaintiff's counsel conducted confirmatory discovery concerning the size and scope of the Settlement Class and the Parties negotiated and finalized the full-form Settlement Agreement, which is attached to the Fraietta Declaration as Exhibit 1. *Id.* ¶ 13. On December 15, 2022, this Court granted preliminary approval to the Settlement. *Id.* at ¶ 20 (citing ECF No. 28).

## III.   TERMS OF THE SETTLEMENT AGREEMENT

The terms of the Settlement agreement are briefly summarized as follows:

### A. Class Definition

The "Settlement Class" is defined as:

> All Persons with a Michigan street address who subscribed
> to The Economist Publication to be delivered to a

> Michigan street address or electronically between
> February 4, 2015, and July 30, 2016.[4]

Agreement ¶ 1.31. Based on Defendant's records, there are 22,987 Settlement Class

Members. *See* Bahry Decl. ¶¶ 7-8.

### B. Monetary Relief

Defendant will establish a $9,500,000 non-reversionary Settlement Fund from

which each Settlement Class Member who does not exclude him or herself shall

automatically receive a *pro rata* cash payment, estimated to be $261, after payment

of notice and administrative expenses, attorneys' fees, and a service award to the

Class Representative. Agreement ¶¶ 1.33, 2.1. No portion of the Settlement Fund

will revert back to Defendant. *Id.* ¶ 2.1(h).

### C. Release

In exchange for the $9,500,000 cash payment, Defendant and each of its

related and affiliated entities (the "Released Parties" defined in ¶ 1.27 of the

Settlement) will receive a full release of all claims arising out of or related to

Defendant's disclosure of its Michigan customers' magazine subscription

---

[4] Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

information. *See* Agreement ¶¶ 1.26-1.28 (containing full release language).

**D. Notice and Administration Expenses**

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. Agreement ¶¶ 1.29-30, 1.33.

**E. Service Award and Attorneys' Fees and Expenses**

In recognition of her efforts on behalf of the Settlement Class, Defendant has agreed that Plaintiff Kain may receive, subject to Court approval, a service award of $5,000 from the Settlement Fund, as appropriate compensation for her time, effort, and leadership serving as class representative. Agreement ¶ 8.3. On February 6, 2023, Plaintiff filed her Unopposed Motion for Attorneys' Fees, Costs, Expenses, and Service Award (ECF No. 30) ("Fee Petition") seeking a service award of $5,000 (PageID.939).

Further, in the Fee Petition, Class Counsel requested that this Court approve "attorneys' fees, costs, and expenses in the amount of 35% of the settlement fund, or $3,325,000.00 USD." *Id.* Class Counsel's unopposed request for approval of its attorneys' fees, costs and expenses is currently before the Court. Class Counsel's request comports with the Agreement, which indicates that Class Counsel may request an award of attorneys' fees and expenses of 35% of the Settlement Fund. *See* Agreement ¶¶ 1.33, 8.1.

The Fee Petition containing the requested service award for the Class Representative and award of attorneys' fees, costs, and expenses for Class Counsel is unopposed, and there were no objections to it. Payment of attorneys' fees, costs, and expenses is due within 10 days after entry of Final Judgment. Agreement ¶ 8.2.

## IV. THE NOTICE PLAN COMPORTS WITH DUE PROCESS

Before final approval can be granted, Due Process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation omitted). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interest." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 630 (6th Cir. 2007) (citation

omitted).

That said, Due Process does not require that every class member receive notice, and a notice plan is reasonable if it reaches at least 70% of the class. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding notice plan to be "the best notice practicable" where combination of mail and publications notice reached 81.8% of the class); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) (finding that notice and claims processes were appropriate where 90.8% of notices were successfully delivered to addresses associated with class members). The notice plan here readily meets these standards, as it provided direct notice via a postcard or email to 95.9% of the Settlement Class. Bahry Decl., ¶ 12.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and Due Process. ECF No. 28 at ¶¶ 12-14, PageID.923-924. That plan has now been fully carried out by professional settlement administrator, JND Legal Administration ("JND"). Pursuant to the Settlement, Defendant provided JND with a list of 23,041 available names, addresses, and emails of potential Settlement Class Members. Bahry Decl., ¶ 6. After JND removed duplicates, the Class List contained 22,987 persons. *Id.* ¶ 7. JND

successfully delivered the Court-Approved notice via postcard or e-mail (for Settlement Class Members with a valid e-mail address whose Postcard Notice was returned to JND as undeliverable and for whom JND could not locate an alternative mailing address) to 22,045 Settlement Class Members. *Id.* ¶¶ 9-12. Accordingly, the Court-approved notice successfully reached 95.9% of the Settlement Class. Agreement ¶¶ 4.1(b); Bahry Decl., ¶ 12.[5] These summary notices also directed Settlement Class Members to the Settlement Website where they were able to submit change of address forms, access important court filings including the Fee Petition and see deadlines and answers to frequently asked questions. Agreement ¶ 4.1(c); Bahry Decl., ¶¶ 13-15.

Given the broad reach of the notice, and the comprehensive information provided, the requirements of due process and Rule 23 are met.

## V. THE SETTLEMENT WARRANTS FINAL APPROVAL

The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts

---

[5] JND also notified the appropriate state and federal officials pursuant to CAFA. Bahry Decl., ¶¶ 4-5.

within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *UAW*, 497 F.3d at 632 (citation omitted); *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has overlaid its own factors to consider. *See UAW*, 497 F.3d at 631. They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.* As described below, each factor

affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

## A. The Rule 23(e)(2) Factors Weigh in Favor of Final Approval

This Settlement satisfies each of the Rule 23(e)(2) factors.

<u>First</u>, as explained above, Plaintiff and Class Counsel have adequately represented the class, including by securing an excellent per class member recovery, the best ever approved in a PPPA case. *See supra* at § 1 (Introduction).

<u>Second</u>, the Settlement was negotiated at arm's length. The Parties conducted a mediation with Judge Holderman after exchanging information sufficient to adequately assess the strengths and weaknesses of the case. *See supra* at § II.C.

<u>Third</u>, the relief provided is clearly adequate when taking into account the factors listed in Rule 23. The Settlement represents the best ever per-class member recovery in a PPPA case and does so without additional delay and uncertainty of litigation. The Settlement also provides for Settlement Class Members to receive cash payments of approximately $261 without even filing a claim form. Agreement ¶ 2.1. The attorneys' fees and costs provided for by the Settlement are consistent with that of other PPPA settlements in this District. *See, e.g.*, *Perlin v. Time Inc.*, No. 2:16-cv-10635 ECF No. 55, PageID.1087-1095 (E.D. Mich. Oct. 15, 2018) (awarding 40% of $7.4 million settlement fund in PPPA action); *Kinder v. Meredith Corp.*, No. 1:14-cv-11284 ECF No. 72, PageID.2396-2436 (E.D. Mich. May 18,

2016) (awarding 35% of $7.5 million settlement fund in PPPA action); *Moeller v. American Media, Inc.*, No. 2:16-cv-11367 ECF No. 42, PageID.891-899 (E.D. Mich. Sept. 28, 2017) (awarding 35% of $7.6 million settlement fund in PPPA action). As noted, the Settlement Agreement is attached to the Fraietta Declaration as Exhibit 1.

Fourth, the Settlement treats class members equitably relative to each other as every Settlement Class Member will receive an identical *pro rata* cash payment under the Settlement. Agreement ¶ 2.1.

**B. The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval**

**1. There is No Risk Of Fraud Or Collusion (*UAW* Factor 1)**

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt*, 581 F. Supp. 2d at 838. Where, as here, a settlement was reached through arm's-length negotiations through an experienced mediator, there is no fraud or collusion. *See, e.g.*, *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy.").

### 2. Litigation Through Trial Would Be Complex, Costly, and Long (*UAW* Factor 2)

The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151 at *17. This case is no exception. As discussed above, the Parties have briefed a dispositive motion, engaged in informal discovery, and a private mediation. Fraietta Decl. ¶¶ 6-7, 9-12. The next steps in the litigation would include a decision on the contested motion to dismiss (including on the appliable statute of limitations), formal discovery, including written discovery, depositions of the Parties, and third-party discovery, and contested motions for summary judgment and class certification, which would be at a minimum costly and time-consuming for the Parties and the Court, and create risk that a litigation class would not be certified and/or that the Settlement Class would recover nothing at all. Defendant has indicated that it would continue to assert numerous defenses on the merits. More specifically, Plaintiff is aware that Defendant would continue to assert that the case is time-barred by the statute of limitations. If that argument failed, Defendant would continue to assert that the PPPA does not prohibit the disclosure of the magazine subscriptions information at issue (because the third-party recipients of the alleged disclosures are Defendant's agents), that Defendant provided appropriate notice of its practices so as to make the

alleged disclosures permissible under the PPPA, and that the PPPA does not apply to subscriptions that were not sold by Defendant "at retail," as is required to come under the scope of the statute. Plaintiff and Class Counsel are also aware that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial. Looking beyond trial, Plaintiff is also aware that Defendant could appeal the merits of any adverse decision. Due to the statutory damages in play, Defendant would argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns. *Id.* ¶ 18.

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeals and provides certainty whereas litigation does not and could result in defeat for the Class on a motion to dismiss, at summary judgment, at trial, or on appeal. Consequently, this *UAW* factor weighs in favor of final approval of the Settlement.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*UAW* Factor 3)

The third *UAW* factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. Here, the Parties exchanged information that would have contained the same information produced in formal discovery related to issues of class certification and summary judgment; and thus, the Parties had sufficient

information to assess the strengths and weaknesses of the claims and defenses. Fraietta Decl., ¶ 11. Class Counsel's experience in similar matters, as well as the efforts made by counsel on both sides, confirms that they are sufficiently well apprised of the facts of this action, and the strengths and weaknesses of their respective cases, to make an intelligent analysis of the Settlement.

### 4. Plaintiff Would Face Real Risks if the Case Proceeded (*UAW* Factor 4)

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. As aforementioned, Defendant has made clear that absent a settlement, it would proceed with its motion to dismiss, including on statute of limitations grounds; move for summary judgment on various issues; and vigorously contest class certification. *See supra* at § V.B.2. The risk of maintaining class status through trial is also present. The Court has not yet certified a litigation class and the Parties anticipate that such a determination would only be reached after lengthy discovery and exhaustive class certification briefing is filed. Defendant would likely argue that individual questions preclude class certification. Defendant would also likely argue that a class action is not a superior method to resolve Plaintiff's claims, and that a class trial would not be manageable.

Even if the Court did certify a litigation class, Defendant would likely challenge certification through a Rule 23(f) application and subsequently move to decertify, forcing additional rounds of briefing. Risk, expense, and delay permeate

such a process. The Settlement eliminates this risk, expense, and delay. This *UAW* factor thus favors final approval.

### 5. Class Counsel and the Class Representative Support the Settlement (*UAW* Factor 5)

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Gen. Motors Corp.*, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). Here, both Class Counsel and the Class Representative support the Settlement. *See* Fraietta Decl. ¶ 26. This *UAW* factor therefore favors final approval.

### 6. The Reaction of Absent Class Members Is Uniformly Positive (*UAW* Factor 6)

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. In most class action settlements, a small number of opt-outs and objections "are to be expected" and do not impact the Settlement's fairness. *In re Cardizem*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected). But here, **<u>zero</u>** class members objected and only two class members opted out. Bahry Decl. ¶¶ 19-21. The lack of objections and the miniscule number of exclusions is even more impressive when considering that 95.9% of the Settlement

Class received direct notice of the Settlement. Bahry Decl. ¶ 12. This *UAW* factor

therefore plainly weighs in favor of final approval. *See, e.g.*, *Hanlon v. Chrysler*,

150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of

the class willingly approved the offer and stayed in the class presents at least some

objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health

Plan, Inc.*, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) ("The fact that the

vast majority of class members neither objected nor opted out is a strong indication

of fairness.").

### 7.  The Settlement Serves the Public Interest (*UAW* Factor 7)

The seventh and final *UAW* factor is "the public interest." *UAW*, 497 F.3d at

631. "[T]here is a strong public interest in encouraging settlement of complex

litigation and class action suits because they are notoriously difficult and

unpredictable and settlement conserves judicial resources." *In re Cardizem CD

Antitrust Litig.*, 218 F.R.D. at 530 (internal quotations omitted). Further, when

individual class members seek a relatively small amount of statutory damages,

"economic reality dictates that [their] suit proceed as a class action or not at all."

*Eisen*, 417 U.S. at 161. Society undoubtedly has a strong interest in incentivizing

lawyers to bring complex litigation that is necessary to protect the privacy of

consumers' personal reading choices. In fact, class action litigation in this area is the

most realistic means of safeguarding the privacy of readers under the PPPA,

especially because consumers are generally unaware that their privacy rights are being violated by these data sharing practices (here, Plaintiff alleged that Defendant secretly disclosed its customers' personal reading information). Thus, the alternative to a class action in this case would have been no enforcement at all, and Defendant's alleged unlawful conduct would have gone unremedied. This factor therefore supports final approval.

All of the *UAW* factors weigh in favor of approval, and the Settlement on its face is fair, reasonable, and adequate, and not a product of collusion. The Court should therefore grant final approval.

## VI.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

This Court's preliminary approval order (ECF No. 28) conditionally certified a class, for settlement purposes, of: "All Persons with a Michigan street address who subscribed to The Economist Publication to be delivered to a Michigan street address or electronically between February 4, 2015, and July 30, 2016." *Id.* ¶ 9 (the "Settlement Class"). This Court's preliminary approval order also appointed Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP, and E. Powell Miller of The Miller Law Firm, P.C. as Class Counsel for the Settlement Class and Plaintiff Rebecca Kain as Class Representative. *Id.* ¶ 8.

This Court certified the Settlement Class and appointed Class Counsel and Plaintiff as Class Representative based on lengthy argument analyzing the propriety of certification under Rule 23(a) and Rule 23(b)(3) set forth in Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 25, PageID.721-733. This Court was correct in conditionally certifying the Class for settlement purposes pursuant to Rules 23(a) and (b)(3), and nothing has changed to alter the propriety of this Court's certification. This Court should now grant final certification of the Settlement Class.

## VII.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant the Unopposed Motion for Final Approval of Class Action Settlement and enter Final Judgment in the form submitted herewith (attached as **Exhibit C** hereto).

Dated: March 1, 2023                    Respectfully submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200
epm@millerlawpc.com

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, New York 10019

21

Tel: 646.837.7150

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107

*Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, E. Powell Miller, an attorney, hereby certify that on March 1, 2023, I served

the above and foregoing ***Plaintiff's Unopposed Motion for Final Approval of Class***

***Action Settlement*** on all counsel of record by filing it electronically with the Clerk

of the Court using the CM/ECF filing system.

*/s/ E. Powell Miller*
E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste 300
Rochester, MI 48307
Tel: 248.841.2200
